Case No. 19-4060, Jeffrey Mann, et al. v. Ohio Department of Rehabilitation, et al. Arguments not to exceed 15 minutes per side. Ms. Wiedekind, you may proceed for the appellants. Thank you. Good morning. Good morning. Go ahead. May it please the court. Jennifer Wiedekind for the plaintiff's appellants. I would like to reserve three minutes for rebuttal. Chronic hepatitis C is a serious, progressive, and ultimately fatal disease when left untreated. The plaintiffs in this case have suffered from pain, jaundice, fatigue, and reduced liver function as a result of their untreated hepatitis C. Yet the defendants denied them the only treatment available for hepatitis C and delivered indifference to their serious medical needs. The district court's erroneous dismissal of plaintiff's claims and the underlying flaw in defendant's argument rests on the assertion that this case is one about the adequacy of care rather than the denial of care. But that assertion misapprehends the claims in this case. This is not a case in which plaintiffs are receiving one form of treatment and prefer another. And this is not, they are not asking this court to question a doctor's medical judgment because no medical judgment was made. And we know no medical judgment was made because defendants denied this treatment in contravention of the medical standard of care based on a blanket policy rather than individualized medical determinations and based on the non-medical rationale of cost. Counsel, there's claims for injunctive relief and damages. Have I got that straight? That's correct. So the injunctive relief, what would you say about that claim? The injunctive relief claim is not moot here because plaintiffs brought this case as a punitive class action and therefore picking off and inherently transitory exceptions apply here. The transitory exception rule is usually a days and weeks problem, maybe months problem. Here wasn't this medication provided about a year later and while it's a serious disease, it's also one that can go fairly slowly. This seems like the opposite of a transitory claim case. Defendants decided to reverse course and provide treatment just two days after the opening brief was filed in this appeal. And precedent from Williams and Unan teaches that the inherently transitory exception can apply in situations in which defendants have the ultimate control over how long an injury will last. And that is exactly the situation we have here. Defendants can control when or if plaintiffs will ever receive treatment. But isn't that the case in any claim for injunctive relief? In many cases, but I think this presents a unique situation in which plaintiffs are incarcerated. They have no ability to obtain relief on their own. They have no ability to seek outside medical care. And so therefore the defendants have the ultimate control over if or when they will receive that care. Are you more concerned about the class action component of this or are you more concerned that this is all a charade? They're going to stop providing the care once the case is over. Well, I think both concerns are at issue here. We know another reason why the inherently transitory exception applies is because the other class members continue to suffer the same injury. We know that just on that point, I'm not aware of an inherently transitory case where the court said it was the injunctive claim wasn't, you know, was not moved for that reason. But the case is still going to go on either way because of damages. Tell me which tell me the case that proves I'm wrong. I thought those were all pure injunction cases. And that's what you had to deal with. There really was a picking off fear. But here this case, they're not picking off. If they want to pick off, they pay the money damages. So the case is going on. So I'm just really puzzled by your invocation of that exception. It just doesn't make sense in a world in which the case is going on. They're not picking off the money damages claims. So what am I missing? They're not picking off the damages claims, but they are picking off the claim for relief that sought a change in the overall policy. And that relief has not yet been provided. But if you want class action litigation or even just the individualized claims to go forward, they're going to go forward. You're going to you'll find out whether you deserve relief or not. Those claims will move forward for damages. But again, here, because one of plaintiff's key concerns was a change in the ultimate policy. That relief may not be available. I didn't really give you a chance to answer the question. Is there a case where the inherently transitory exception of mootness was invoked? And yet there were claims in the case that we're going to live on anyway. Is there a case that does that? I'm not aware if there were damages claims in or Wilson. And I can certainly find something to bring to you if that would be helpful. But I think the key here would be it would be helpful. Okay. If such a case exists, I'm not aware of it. If the damages claim goes forward, could you get injunctive relief that that would apply to everybody? Or would the most you would get would be simply a check for these couple of individuals? I believe the most that we could get from a court would be the damages relief. Because they would argue that they no longer have standing to seek a policy change. If there is an underlying issue about how this state or other states should handle hepatitis C. And we didn't get some kind of exception. How could we ever litigate it? That's exactly right. You know, here, though, the damages claim will continue. Portion of what they're seeking is this change in policy. And if defendants are continuously allowed to pick off those claims, continuously allowed to try to moot out the claims of individual plaintiffs, no plaintiff will ever be able to get the relief of the policy change that we are looking for. That's the best of all worlds. That means you're getting paid without showing you deserve it. Well, it is as made clear in the complaint and through the briefing that was done pro se in the district court. A primary concern of the plaintiffs in this case is not just the damages, but is seeking the policy change. So that all others who are similarly situated will also receive that same remedy. If we go to the merits briefly, what's your reaction to cases like the 9th and 11th circuit? Sorry, not 9th and 11th, the 5th and 11th, the black case in the 11th and the Roy case in the 5th, which are both cases where they pretty much gave pretty short shrift to your overall theory that managing these hepatitis C rather than going in with the treatment that they want fairly early on is an adequate way. I think one of them actually looks at the, you know, whatever the medical measurement is, where they will start giving the treatment at a certain point. And that court seemed to find that was fine. Yes, well, the distinction between black and Roy is, well, first, they were both litigated purely pro se. Secondly, the court had no information before it about the standard of care or about the serious harm that is caused from high-strated HCE. Here, we know that the plaintiffs are suffering from pain, jaundice, fatigue, reduced liver function already. We know that the standard of care requires that patients be treated early in the progression and that all patients be provided with care. The courts in black and Roy did not have the opportunity to consider that type of information. And so those unpublished cases provide little direction to this court. You know, you've got this argument that there's no medical judgment and so forth. How does that relate to the use of the APRI score? Are you making the point that that's problematic to rely too heavily on the score? Or are you saying they're not actually relying on the score or the score is useless? Well, it's problematic to rely on the score. You know, cloaking the threshold in this sort of arbitrary APRI criteria does not mean that medical judgment was actually exercised here. And in fact, the face of the complaint supports that the face of the policy, excuse me, supports the allegations that no medical judgment was used because this APRI threshold policy requirements are essentially the opposite of what the standard of care requires. But why is APRI such a bad tool? That's not obvious to me. Well, the APRI can be a helpful tool when considered in conjunction with a number of other individualized factors. But we also know from the complaint that it is an imperfect measure of the progression of the disease. So the reliance on it actually results in perhaps further delay before any care can be provided because it does not accurately measure the degree of the deterioration of one's liver. What takes that, the point you just made, which I will accept is sounding negligence, what takes it beyond negligence? Everything you just said, why is that more than medical malpractice? It's because this threshold was employed as part of the application of a blanket policy where no individualized determinations were made. And that creates the constitutional violation here. When did they shift to this treatment? DAAs first came on the market in 2011. They were widely available by 2014. When did the facility shift to this treatment? It is not in the record when or if ODRC has started providing DAAs pursuant to this policy. In fact, and I apologize, my time is up. But if I may finish my answer. Sure. Yeah. Then you can do a rebuttal. Great. The policy indicates that, you know, it is still actually designed around the prior standard of care, referring to things like interferon. But at this stage where there's been no discovery, we don't have any information about when they started employing DAA treatment. But are you saying that your clients were the first ones who received that? Or don't you know? We don't know at this stage in the litigation. But you're not alleging that anybody else or the answer doesn't say that others are getting it? As far as we know, we simply don't have those facts either way. We simply don't have those facts. The only information we have is that our three plaintiffs individually were provided the treatment after this appeal was filed. And if we were to remand, allow the case to go forward, of course, all of these facts would be litigated before the judge or a jury as to what is the standard of care? You know, is is allowing progression a reasonable medical treatment, et cetera. Right. That's correct. OK, we're here from the state. Thank you, Your Honors. Good morning. And may it please the court. For the state defendants. The Constitution of the United States does not guarantee prisoners the medical treatment of their preference at the time of their preference. But that is the theory of the plaintiff's case. The district court correctly rejected that theory. And so should this court. More specifically, this court should affirm the district court's judgment. Three reasons. First, the officers did not act with deliberate indifference by withholding one particular kind of treatment from them. Direct acting antivirals at the earliest stage of their disease. Second, the officers were not deliberately indifferent by considering cost as a factor in designing protocols. Third, and finally, the officers were not deliberately indifferent by relying on those general policies in making treatment decisions in general cases. Begin with the first point. The officers did not act with deliberate indifference by withholding from the plaintiffs at the earliest stage of their disease. This court distinguishes between cases where the complaint alleges a complete denial of medical care. And those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention. And the dispute is over the adequacy of the treatment. The court is generally reluctant to second guess medical judgments and to constitutionalize claims, which sound in state tort law. Of course, the fact that a prisoner received some treatment does not completely end the case. Because in some cases, the medical attention rendered may be so woefully inadequate as to amount to no treatment at all. From these standards, a clear rule emerges. To state a deliberate indifference claim based on the denial of medical care, a plaintiff either needs to plausibly allege that he was entirely denied medical care or that he was provided grossly inadequate treatment that it amounted to no care at all. Here, the inmates allege only inadequate care, not a total deprivation of care. Their complaint shows that the prison. What's your response to their point that there's no medical individualized medical judgment? Your Honor, that is contradicted by the face of their pleadings. As the discussion earlier revealed. The protocols take into account the individual circumstances of the inmates by virtue of the fact that they rely on the A.P.R.I. score, among other considerations. Other blood work, whether they have diabetes, a biopsy, if that's called for. It's all within the exclusion and inclusion criteria. All of that is an individualized assessment, and one can debate whether the A.P.R.I. score is the best diagnostic measure. We know from Estelle that picking and choosing among diagnostic measurements is really a classic instance of medical judgment that is really beyond the purview of the Eighth Amendment to regulate. But it is a measure, and their own pleadings suggest, not a bad measure of the stage of their disease. And again, one can debate whether that threshold should be set higher or lower. Again, we think that's a matter of medical judgment. But I don't think one can fairly construe our reliance on the A.P.R.I. score as anything but a medical judgment, whether you agree with that. Go ahead, Judge White. No, no, it's OK. Well, my real quick question was there quite a few of these hepatitis C cases. They seem to favor your side. But what percentage of them are motion to dismiss cases, and what percentage of them are summary judgment cases? Do you have a sense for that? I think, frankly, Your Honor, I've seen a number of them that are summary judgment. I think I've probably seen more that are summary judgment. I'm not sure whether a motion to dismiss was filed in those cases. I will say Buchanan v. Moore, just off the top of my head, out of the Southern District, that was on a motion to dismiss, I believe. The point I'm getting at is, you know, maybe the state of the law is pretty favorable to the state. But why isn't the way to think about this that, you know, it's a sufficiently complicated issue that there ought to be some more discovery here and that it really should be teed up as a summary judgment case? Fair enough, Your Honor. I think my response to that is standard. I completely accept that 12b-6 is supposed to be a liberal pleading standard, right? The fact that we're pro se litigants, I understand, also cuts in favor of considering that liberally. At the same time, this court has said, as recently as Reinhart v. Scutt a couple of years ago and many other times before that, that it is a very tall burden to plead plausibly that an inmate has been treated so poorly as to essentially have been not treated at all. It is a tall burden. What about the inmates that have fewer than four years left? Aren't they absolutely denied? So, under the old policy, Your Honor, I think that's a fair reading. I will say that policy has changed, and regardless, it's not at issue in this case. But I think that that is a fair reading. Yes, but that policy is not at issue in this case. There's no allegation whatsoever that these inmates have less than four years left in their sentence. But it was pled as a class action. Correct, Your Honor, but the focus, the entire focus of their allegations was that we unconstitutionally delayed treatment based on this APRI score and that we weren't providing direct acting antivirals at the earliest stage of their disease. They have not developed an argument either in their complaint or in their brief at all with respect to that part of the protocol. I just don't think it's fairly encompassed within the issues of this case. What's your response to the mootness arguments that there's, you know, the inherently transitory exception, and therefore the injunctive claims are not moot? Well, Your Honor, so I will just say we didn't really develop an argument about this. Our whole point, I think it was maybe three sentences in our brief was just out of a duty of candor to the court that this is what's been going on since at least 2015, to my knowledge. And again, none of this is in the record. As for the inherently transitory exception, I think it's well established that the state's representations are entitled to an extra degree of solicitude. And I'm not aware of a case, as was discussed earlier, in which the class claims continue even after the injunctive claims have been mooted. Maybe just to be clear, is the state's position that the request for injunctive relief by these three plaintiffs is moot? I believe that is our position, Your Honor, because the policy did change. And as far as I know, every inmate is now being treated with direct acting antivirals. Certainly every inmate, like these inmates who have past treatment failures, I'm actually looking at our new policy, and that is one of the considerations. So if this case were to be remanded, that is certainly what we would develop further. We would obviously introduce the policy into the record, but our position is that the injunctive claims are moot. You're not saying that with the conviction one likes to see as a judge, and I can't understand why. I mean, it's not – I actually appreciate it. If you can't say it with conviction or there's some uncertainty, that's helpful to know that that would support a remand. I guess I was just thinking it's an on switch or it's an off switch, and I thought the switch was on when it came to the request for injunctive relief. If there's uncertainty about that, that seems like a really highly relevant fact to sort out at the district court. Well, we think that their Eighth Amendment claims bail on the merits, and we agree that the damages claims are certainly still alive. Our position is that the injunctive claims are moot because they are now being provided exactly what they have requested, which are the direct acting antiviral drugs pursuant to a policy that has gone through a review committee, and it doesn't just represent us willy-nilly saying that out of nothing. So, no, I want to reiterate we firmly believe that these claims, these injunctive claims are moot. But you say because of this new policy, but the new policy isn't in the record, right? The new policy is not in the record, and I will admit we didn't really develop an argument about this on appeal. It was really more out of a degree of candor to the court, and that's why we mentioned it. But isn't it, I mean, if in fact you have changed the policy and people will be getting this drug, I mean, maybe there's nothing left here in the sense that, I mean, I realize there's no hall to go back to you to go into and discuss this, but, I mean, it sounds like maybe in fact you've given them the class relief that they're looking for, and that would be worth talking about. Well, Your Honor, the district court didn't distinguish between injunctive claims or damages claims as it was deciding these Eighth Amendment issues. We think all of those issues are fairly before this court. So, if this court decides that a remand is appropriate, then, you know, we're happy to make and develop these arguments further, but we think that the Eighth Amendment issues here are squarely presented. Again, the district court didn't distinguish between damages or injunctive claims. We have never said that this entire case is moot. So, we think the Eighth Amendment issues are squarely presented. Okay. Go ahead. No, it's okay. If people, as we say, the new policy is not in the record. You say it's great, but obviously some prisoners might not think it's so great. Would the, from your point of view, would the appropriate remedy simply for them to bring a new action and explain why the new policy also violates the Eighth Amendment, or would that be judicially inefficient and we should somehow keep that in this particular litigation? I think you could do that, Your Honor, but I don't really have a strong, I suppose, opinion about that because I think that the damages claims are still fairly… I don't, I don't, I'm fearful that, I quite agree it would help to know exactly what the new policy is for injunctive relief, but I don't see how that solves anything with the retrospective money damages claims. I mean, if the old policy is helpful to the plaintiffs on the damages claims, then I assume they'll want to use that policy. I suppose, Your Honor. I mean, I simply just have not, I haven't thought about that. We are prepared to defend this case on the merits with respect to the damages claim, and even with respect to the injunctive claims, because we don't think the district court's analysis turned on the particular relief that was at issue. I want to address the point about costs, Your Honor. They have said multiple times… Deputy Milton Anthony, we can't see you, so since we can't see you, I'm pretty confident they can't see whether you're waving a yellow or red flag. There you go. Your Honor, there are two minutes and four seconds remaining. Okay, great. Thanks. Go ahead. Just on the cost, Your Honor, you mentioned the blanket policy, but we think that a similar rationale also applies to the cost. We don't think that these policies can be fairly construed as solely upon cost, again, because the policies take into account the individual circumstances of the inmates. So, I think we agree that there's some case law out there that suggests that cost can't be the exclusive or the sole reason. We just think that that's completely contradicted by the pleadings in this case. And so, our submission to you is that this is not a situation where policies are based entirely on cost. We don't think the pleadings fairly allow that inference, and we don't think that they have possibly alleged otherwise. I've got about a minute left, Your Honors. If there are no other questions for me, then I'll happily see the rest of my time and respectfully ask that you affirm the judgment of the district court. Okay, thank you very much. Thank you. We've heard actually some brand new factual information just now, and I think that only counsels toward a remand, particularly around the issue of mootness. The new policy is not in the record, as it was noted. But the counsel, the one thing you're an expert on is your clients, and you're not denying they're receiving the drugs they asked for. Yes, our clients are. But again, the broader question of whether or not there has been class-wide relief is still an open question, and that counsels toward finding that the picking off and inherently transitory exceptions still apply on mootness. Counsel, what difference, other than I guess some inefficiency, is there between remanding this case to litigate the new policy and having a new case to litigate the new policy? Do you get some procedural advantage by saying that it's a remand of this case? Well, this case should be remanded regardless because those damages claims remain wide. On that part, I understand. But as to whether we would potentially say that the rest of it is moot? Well, I think it would be more efficient to remand this case on both the damages and injunctive claims to leave it as a unified suit moving forward, as opposed to having multiple suits that may result in multiple sets of fact-finding and multiple opinions from different judges. So in that sense, keeping this case unified, damages and the exploration of the injunctive relief, is the most efficient path. Since you're going back anyway, can't you seek to add new plaintiffs? Yes, we can. Counsel, just maybe I'm missing something. You would ask us to do that without ruling on the damages claims? Well, no. If for any remand, presumably there would be a ruling that plaintiffs have plausibly alleged deliberate indifference here. And that would pertain to both the damages and the injunctive relief claim. And would we or should we address then qualified immunity in terms of saying, look, there are these cases all over the lot. How can anything be clearly established? Well, this court may not even reach the question of qualified immunity because defendants waived that argument by not raising it before the district court. Defendants concede that they failed to waive it before the district court and they have presented no compelling reason why. Counsel, where are you heading with this argument? Tell us what the plan is. If we send it back, put the new policy in, of course, there's going to be qualified immunity at that point. This is the same district court that ruled as a matter of law on prong one of qualified immunity. And the only thing that's happened is things have gotten better for them because they've changed the policy in a way that's helpful to your clients and potentially the class. What good does it do not to say how qualified immunity works now? That one is really baffling. I can't I really can't imagine are saying let's just talk about prong one, the constitutional issue. Let's pretend there's no qualified immunity here. It's been briefed to us. You're allowed to rely on alternative grounds for affirmance. You're losing me on this. Well, I don't think it would be in the in the interest of judicial economy for this court to consider a novel issue raised for the first time in a response brief on appeal. The fact that it's a novel issue is really relevant. But this court has not had the benefit of a district court's consideration of the question. The parties have not been able to fully brief it before the district court. And that is why these rules of the thing we have the benefit of is there's no plausible constitutional claim. The thing that courts of appeals have a comparative advantage on is what is the clearly established law that doesn't there's no fact finding about what clearly established law is. That just seems really head scratching to me. The one thing we're in a good position to do something about. You don't want us to do well. And I apologize, Your Honor. I'm at my time. But if I may answer your question, we think it's clear that the law is clearly established here. Why don't you want us to why don't you want us to say that? Well, this court is, of course, free to make that finding. However, again, because the argument has been waived, we don't think this court needs to even reach the question. OK. All right. Thanks so much. We appreciate your helpful arguments and sort this out. All the next case.